UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KIMBERLY WRIGHTMAN,

               Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

CASE NO. C15-01557 BHS

ORDER REVERSING AND
REMANDING THE
COMMISSIONER'S DECISION

## I. BASIC DATA

Type of Benefits Sought:

     ( ) Disability Insurance

     (X) Supplemental Security Income

Plaintiff's:

     Sex: Female

     Age: 21 at application date

Principal Disabilities Alleged by Plaintiff: Bipolar disorder, social anxiety disorder, back
pain, knee pain, ankle pain, and allergies

Disability Allegedly Began: June 1, 2004

Principal Previous Work Experience: In-home care provider

Education Level Achieved by Plaintiff: High school diploma

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ Irene Sloan:

    Date of Hearing: October 23, 2013; hearing transcript AR 39-83

    Date of Decision: November 29, 2013

    Appears in Record at: AR 10-38

    Summary of Decision:

> The claimant has not engaged in substantial gainful activity since June 2, 2010, the application date.  The claimant has the following severe impairments: obesity, asthma, affective disorder, anxiety disorder, and personality disorder.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> The claimant has no past relevant work.  Considering the claimant's residual functional capacity, there are jobs existing in significant numbers in the national economy that the claimant can perform.  Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since June 2, 2010, the application date.

Before Appeals Council:

    Date of Decision: August 4, 2015

    Appears in Record at: AR 1-7

    Summary of Decision: Declined review

1

### III. PROCEDURAL HISTORY—THIS COURT

2

Jurisdiction based upon: 42 U.S.C. § 405(g)

3

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

4

### IV. STANDARD OF REVIEW

5

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

6 denial of Social Security benefits when the ALJ's findings are based on legal error or not

7 supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

8 1211, 1214 n.1 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than

9 a preponderance, and is such relevant evidence as a reasonable mind might accept as

10 adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

11 *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for

12 determining credibility, resolving conflicts in medical testimony, and resolving any other

13 ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

14 While the Court is required to examine the record as a whole, it may neither reweigh the

15 evidence nor substitute its judgment for that of the ALJ.  *See Thomas v. Barnhart*, 278

16 F.3d 947, 954 (9th Cir. 2002).  "Where the evidence is susceptible to more than one

17 rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

18 must be upheld."  *Id.*

19

### V. EVALUATING DISABILITY

20

The claimant, Kimberly Wrightman ("Wrightman"), bears the burden of proving

21 that she is disabled within the meaning of the Social Security Act ("Act").  *Meanel v.*

22 *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to

1    engage in any substantial gainful activity" due to a physical or mental impairment which

2    has lasted, or is expected to last, for a continuous period of not less than twelve months.

3    42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).  A claimant is disabled under the Act only if her

4    impairments are of such severity that she is unable to do her previous work, and cannot,

5    considering her age, education, and work experience, engage in any other substantial

6    gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also*

7    *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

8         The Commissioner has established a five-step sequential evaluation process for

9    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R.

10   §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through

11   four.  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step

12   five, the burden shifts to the Commissioner.  *Id.*

13                                **VI. ISSUE ON APPEAL**

14        1.      Does the ALJ's exclusion of evidence warrant remand?[1]

15        2.      Did the ALJ err in assessing the medical evidence in the record?

16        3.      Did the ALJ err in assessing Wrightman's credibility?

17

18

19   _____

20        [1] Because the Court concludes that the ALJ's determination should be reversed and
     remanded for substantive reasons, the Court declines to rule on this issue.  However, on remand,
21   the ALJ should consider accepting similar evidence into the record if offered.  While the
     evidence may be irrelevant as to the claimant's application (*see Yost v. Colvin*, C15-1279TSZ
     (W.D. Wash. May 24, 2016)), accepting it into the record precludes a remand for technical
22   procedural reasons (*see Theiss v. Colvin*, C15-1519MAT (W.D. Wash. June 28, 2016)).

1        4.      Did the ALJ err in assessing Wrightman's residual functional capacity

2            ("RFC") and therefore in determining that Wrightman could perform other work at step five?

## VII. DISCUSSION

Wrightman appeals the Commissioner's decision denying her disability benefits, arguing that the ALJ committed several errors requiring reversal.  Dkt. 12.  The Court addresses each alleged error in turn.

**A.     Exclusion of Evidence**

Wrightman argues that the ALJ erred by failing to include in the administrative record evidence that Wrightman submitted in advance of the administrative hearing alleging bias by the ALJ.  *See id*. at 6-12.  The Court finds the exclusion of the evidence from the record not to be a harmful error.

Wrightman requested that the ALJ admit a variety of materials (hereinafter referred to as "the excluded materials") into the record, including letters written by psychologists who did not treat or examine Wrightman, copies of decisions written by the ALJ in other cases, and affidavits from other claimants' representatives.  *See* AR 14-16.  The excluded materials allegedly supported Wrightman's request for recusal, claiming that the ALJ in her case is biased against claimants with mental impairments or those who receive public assistance benefits.  *See id*.  The ALJ denied the request for recusal and did not admit the excluded materials into the record.  *See id*.  Wrightman argues that the ALJ erred by excluding the materials.  *See* Dkt. 12 at 6-12.

The Court notes that it is unclear why Wrightman did not attach the excluded materials to her briefing.  Instead, the Court must rely on Wrightman's description of the

1    excluded materials.  However, even taking Wrightman's description of the excluded

2    materials at face value, the Court finds any potential error in excluding the materials to be

3    harmless because the excluded materials, as described, do not establish bias by the ALJ

4    or any other error that affected the disability determination.  *See Ludwig v. Astrue*, 681

5    F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to

6    demonstrate not only the error, but also that it affected his 'substantial rights,' which is to

7    say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09

8    (2009)); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error

9    harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability

10   conclusion).

11        First, Wrightman makes no argument that the psychologists' letters, which broadly

12   describe certain psychiatric issues, establish any specific error in her case.  Instead,

13   Wrightman argues that the letters were relevant because they generally support her claim

14   and "undercut" several of the ALJ's statements.  *See* Dkt. 12 at 11.  However, such

15   general support – absent the existence of actual opined work-related limitations that

16   specifically apply to Wrightman – does not establish that her RFC was deficient in any

17   way.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (holding that where the

18   medical evidence in the record is not conclusive, resolution of conflicts is solely the

19   responsibility of the ALJ); *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-

20   95 (9th Cir. 1984) (finding that the ALJ need not discuss all evidence presented to her but

21   must only explain why significant probative evidence has been rejected).  Likewise,

22   Wrightman makes no argument that the affidavits from other claimants' representatives

1  establish any specific error in her case.  Wrightman has not met her burden of showing

2  harmful error.

3         Next, the copies of decisions written by the ALJ do not establish the generalized

4  bias that Wrightman alleges.  The small assortment of prior decisions by the ALJ – within

5  which Wrightman does not indicate how many, if any, were reversed upon review – does

6  not demonstrate the alleged bias or routine misapplication of the law.  First, Wrightman

7  alleges that the ALJ's percentage of favorable decisions is well below the national

8  median rate.  *See* AR 260.  However, some ALJs must inevitably fall toward the bottom

9  of the range of percentage of favorable decisions; that the ALJ in this case is one of them

10 does nothing to establish any particular bias toward claimants such that she cannot fairly

11 hear cases.  Second, Wrightman alleges that the ALJ demonstrated a low approval

12 percentage among claimants with mental illnesses or who received evaluations from the

13 Department of Social and Health Services ("DSHS").  *See* AR 261.  However,

14 Wrightman simply infers that the low approval percentage indicates generalized bias.

15 *See* AR 262.  A lower approval rate from cases involving claimants who are alleging

16 mental illnesses may show nothing more than that those claimants had less meritorious

17 claims.  Lastly, Wrightman alleges that the cases show routine misapplication of the law.

18 *See* AR 266-86.  However, Wrightman does not explain how the Court could review the

19 legal analysis in the other cases without their full records or how reviewing the decisions

20 for legal error in this proceeding would be consistent with the provisions or the purpose

21 of the Social Security Act.  *See* 42 U.S.C. § 405(h).  Therefore, the Court finds that even

22

1  if the exclusion of the evidence alleging ALJ bias were in error, the evidence as described

2  could not prove bias, so Wrightman has not shown harmful error.

3  **B.    Medical Evidence**

4          Wrightman argues that the ALJ erred in evaluating the opinions of several medical

5  professionals in the record.  *See* Dkt. 12 at 12-22.  The ALJ is responsible for

6  determining credibility and resolving ambiguities and conflicts in the medical evidence.

7  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  In resolving questions of

8  credibility and conflicts in the evidence, an ALJ's findings "must be supported by

9  specific, cogent reasons."  *Id.* at 725.  The ALJ can do this "by setting out a detailed and

10 thorough summary of the facts and conflicting clinical evidence, stating his interpretation

11 thereof, and making findings."  *Id.*

12         The ALJ must provide "clear and convincing" reasons for rejecting the

13 uncontradicted opinion of either a treating or examining physician.  *Lester v. Chater*, 81

14 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is

15 contradicted, that opinion "can only be rejected for specific and legitimate reasons that

16 are supported by substantial evidence in the record."  *Id.* at 830-31.  In general, more

17 weight is given to a treating physician's opinion than to the opinions of those who do not

18 treat the claimant.  *Id.* at 830.  An examining physician's opinion is "entitled to greater

19 weight than the opinion of a nonexamining physician."  *Id.* at 830-31.

20         **1.    Daniel Neims, Psy.D.**

21         Wrightman argues that the ALJ failed to acknowledge or incorporate parts of the

22 opinion of Daniel Neims, Psy.D.  *See* Dkt. 12 at 12-14.  The Court disagrees.

1    Dr. Neims evaluated Wrightman in June of 2010 and opined that she had mild to

2    moderate limitations in cognitive functioning and moderate to marked limitations in

3    social functioning.  *See* AR 398-406.  The ALJ gave Dr. Neims's opinion significant

4    weight, finding that the limitations were consistent with the overall evidence and

5    accommodating for the limitations in Wrightman's RFC.  *See* AR 26-27.

6    Wrightman argues that the opined limitations "alone support disability," which is

7    incorrect.  *See* Dkt. 12 at 13.  A vocational expert testified that a person with an RFC

8    incorporating those limitations could perform work in the national economy.  *See* AR 74-

9    78.  Wrightman argues that the ALJ failed to discuss that Dr. Neims found that certain

10   symptoms in particular were of marked severity.  *See* Dkt. 12 at 13.  However, Dr. Neims

11   translated the severity of those symptoms into an analysis of Wrightman's functional

12   limitations, all of which the ALJ agreed with and incorporated into her RFC.  *See* AR 27,

13   400, 402.  Wrightman argues that the ALJ failed to acknowledge that Dr. Neims found

14   her to be "impaired from sustained general employment."  *See* Dkt. 12 at 13.  However,

15   the ultimate determination as to whether a claimant is disabled is reserved to the

16   Commissioner, so an ALJ is not bound by a medical opinion on a claimant's disability.

17   *See* 20 C.F.R. §§ 416.912(b)(7), 416.927(e)(1).  Finally, Wrightman argues that the ALJ

18   misinterpreted Dr. Neims's observations about Wrightman's credibility.  *See* Dkt. 12 at

19   13-14.  However, Wrightman fails to establish any error, as the ALJ incorporated all of

20   Dr. Neims's opined limitations into the RFC regardless.

21

22

**2.      Terrilee Wingate, Ph.D., Victoria McDuffee, Ph.D., Tasmyn Bowes, Psy.D., and Melinda Losee, Ph.D.**

Wrightman argues that the ALJ erred in evaluating the opinions of Terrilee Wingate, Ph.D., Victoria McDuffee, Ph.D., Tasmyn Bowes, Psy.D., and Melinda Losee, Ph.D.  *See* Dkt. 12 at 15-20.  The Court agrees.

Dr. Wingate evaluated Wrightman in December of 2010 and opined that she had marked limitations in her ability to communicate and perform effectively in a work setting with public contact and in her ability to maintain appropriate behavior in a work setting.  *See* AR 463-69.  Dr. McDuffee evaluated Wrightman in November of 2013 and opined that she had several marked social limitations and a severe limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision.  *See* AR 576-82.  Dr. Bowes evaluated Wrightman in November of 2011 and opined that she was limited to working at home performing simple, repetitive tasks in a low-stress environment.  *See* AR 509-13.  Dr. Losee evaluated Wrightman in August of 2010 and opined that she would likely have difficulty handling normal work pressure and changes in work setting.  *See* AR 419-22.

The ALJ at least partially discounted the opinions of all of these doctors because she believed that their mental status examination ("MSE") results did not support the opined limitations and that their opinions were therefore based primarily on Wrightman's subjective complaints.  *See* AR 27-30.

According to the Ninth Circuit, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted

1  as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting

2  *Morgan*, 169 F.3d at 602).  This situation is distinguishable from one in which the doctor

3  provides her own observations in support of her assessments and opinions.  *See Ryan v.*

4  *Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does

5  not provide clear and convincing reasons for rejecting an examining physician's opinion

6  by questioning the credibility of the patient's complaints where the doctor does not

7  discredit those complaints and supports his ultimate opinion with his own

8  observations."); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

9  Therefore, "when an opinion is not more heavily based on a patient's self-reports than on

10 clinical observations, there is no evidentiary basis for rejecting the opinion."  *Ghanim v.*

11 *Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

12         Here, each of the four doctors included a significant amount of Wrightman's self-

13 reports in their evaluation reports.  *See* AR 420-21, 464, 510-11, 576-77.  However, "[a]

14 patient's report of complaints, or history, is an essential diagnostic tool," and "[a]ny

15 medical diagnosis must necessarily rely upon the patient's history and subjective

16 complaints."  *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted).  In

17 particular, "[m]ental health professionals frequently rely on the combination of their

18 observations and the patient's reports of symptoms," so "[t]o allow an ALJ to discredit a

19 mental health professional's opinion solely because it is based to a significant degree on a

20 patient's 'subjective allegations' is to allow an end-run around our rules for evaluating

21 medical opinions for the entire category of psychological disorders."  *Ferrando v.*

22 *Comm'r of Soc. Sec. Admin.*, 449 Fed. Appx. 610 n.2 (9th Cir. 2011).

1    Each of the doctors also performed an objective MSE.  *See* AR 421, 468-71, 512-

2    13, 579-86.  The MSE is conducted by medical professionals skilled and experienced in

3    psychology and mental health.  "[E]xperienced clinicians attend to detail and subtlety in

4    behavior, such as the affect accompanying thought or ideas, the significance of gesture or

5    mannerism, and the unspoken message of conversation.  The Mental Status Examination

6    allows the organization, completion, and communication of these observations."  Paula T.

7    Trzepacz & Robert W. Baker, *The Psychiatric Mental Status Examination* 3 (1993).

8    Although "anyone can have a conversation with a patient, … appropriate knowledge,

9    vocabulary, and skills can elevate the clinician's 'conversation' to a 'mental status

10   examination.'"  *Id*.  A mental health professional is trained to observe patients for signs

11   of their mental health not rendered obvious by the patient's subjective reports, in part

12   because the patient's self-reported history is "biased by their understanding, experiences,

13   intellect, and personality" (*id*. at 4), and in part because it is not uncommon for a person

14   suffering from a mental illness to be unaware that her "condition reflects a potentially

15   serious mental illness."  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation

16   omitted).

17        In their MSEs, each of the doctors charted results that provided support for their

18   ultimate opinions.  The doctors observed anxiety, depression, fearfulness, hypervigilance,

19   difficulty interacting with others, dramatic presentation, and tension.  *See* AR 421, 466,

20   512, 579.  For the ALJ to pick out certain other normal results from the MSE and

21   determine that the doctors' opined limitations were therefore inconsistent with the

22   objective testing is simply an improper substitution of the ALJ's lay opinion.  *See*

1   *McBrayer v. Sec'y of Health and Human Services*, 712 F.2d 795, 799 (2nd Cir. 1983)

2   (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).  The

3   ALJ's findings that the doctors were improperly reliant on Wrightman's self-reports are

4   not supported by substantial evidence.  The ALJ therefore erred by failing to provide

5   specific and legitimate reasons supported by substantial evidence for discounting the

6   opinions of Dr. Wingate, Dr. McDuffee, Dr. Bowes, and Dr. Losee.

7       Had the ALJ fully credited the opinions of the doctors, the RFC would have

8   included additional limitations, as would the hypothetical questions posed to the

9   vocational expert.  As the ALJ's ultimate determination regarding disability was based on

10  the testimony of the vocational expert on the basis of an improper hypothetical question,

11  these errors affected the ultimate disability determination and are not harmless.

12      **3.      Other Medical Providers**

13      Wrightman argues that the ALJ erred by failing to acknowledge an intake

14  therapist's finding that Wrightman had "marked/repeated" impairments in her ability to

15  manage daily living activities.  *See* Dkt. 12 at 20; AR 484.  However, Wrightman fails to

16  establish harmful error, as an RFC reflects a claimant's "remaining capacities for work-

17  related activities," not activities of daily living.  *See Ludwig*, 681 F.3d at 1054; Social

18  Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *2.

19      Wrightman also argues that the ALJ erred by giving no weight to a Washington

20  Department of Social and Health Services decision approving Wrightman for state

21  disability benefits, alleging that the error violates SSR 96-6p.  *See* Dkt. 12 at 21-22.

22  However, SSR 96-6p applies to evaluating the opinions of state agency medical

1   consultants and other program physicians, not those making initial disability

2   determinations.  *See* SSR 96-6p, 1996 WL 374180.  Wrightman shows no harmful error

3   in the ALJ's rejection of this initial determination, which contained no specific functional

4   limitations that would make the RFC insufficient.  *See* AR 336.

5          Finally, Wrightman argues that the ALJ erred in evaluating her Global Assessment

6   of Functioning ("GAF") scores from several medical providers.  *See* Dkt. 12 at 16, 18,

7   20-21.  The Court finds no harmful error.

8          "A GAF score is a rough estimate of an individual's psychological, social, and

9   occupational functioning used to reflect the individual's need for treatment."  *Vargas v.*

10  *Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  It is "relevant evidence" of a

11  claimant's ability to function and therefore "may be a useful measurement."  *Garrison v.*

12  *Colvin*, 759 F.3d 995, 1002 n. 4 (9th Cir. 2014); *England v. Astrue*, 490 F.3d 1017, 1023,

13  n.8 (8th Cir. 2007).  However, while a GAF score may be "of considerable help" to an

14  ALJ in assessing a claimant's RFC, "it is not essential" to the accuracy thereof.  *Howard*

15  *v. Comm'r, Soc. Sec. Admin.*, 276 F.3d 235, 241 (6th Cir. 2002).  Accordingly, an ALJ's

16  failure to reference or specifically account for a GAF score in assessing a claimant's RFC

17  does not by itself make the RFC assessment inaccurate.  *See id*.

18         Here, Wrightman fails to establish any way in which the RFC is deficient as a

19  result of giving little weight to the GAF scores.  *See* Dkt. 12 at 16, 18, 20-21.  The ALJ

20  included several social limitations in Wrightman's RFC due to mental health

21  impairments.  *See* AR 21.  Wrightman points to no evidence that any GAF score in the

22  record would demand further specific limitations that are definitively missing from the

1  RFC. Therefore, Wrightman has not met her burden of showing harmful error. *See*

2  *Ludwig*, 681 F.3d at 1054.

3  **C.    Wrightman's Credibility**

4         Wrightman argues that the ALJ erred by failing to consider evidence that explains

5  her failure to obtain medical treatment in the context of the credibility assessment. *See*

6  Dkt. 12 at 22. The Court finds no harmful error.

7         Questions of credibility are solely within the control of the ALJ. *See Sample v.*

8  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this

9  credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). To reject

10 a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for

11 the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

12 testimony is not credible and what evidence undermines the claimant's complaints." *Id.*;

13 *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative

14 evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

15 claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. That some

16 of the reasons for discrediting a claimant's testimony should properly be discounted does

17 not render the ALJ's determination invalid, as long as that determination is supported by

18 substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

19        Here, the ALJ discredited Wrightman's testimony for several reasons, including

20 that Wrightman's activities contradict the severe limitations to which she alleged. *See*

21 AR at 23. Wrightman makes no attempt to argue that reason is in error. *See* Dkt. 12.

22 Substantial evidence supports the ALJ's finding that Wrightman's social activities,

1   including playing games at the local card shop and attending appointments alone, were

2   inconsistent with her alleged severe social phobia and inability to leave the house or

3   interact with others without her boyfriend.  *See* AR 23, 46, 58, 511, 544, 549, 551.

4   Therefore, the ALJ provided a clear and convincing reason for discounting plaintiff's

5   credibility and did not err here.

6   **D.      The RFC and Step Five Finding**

7          Wrightman argues that the ALJ's RFC assessment and step five finding were not

8   supported by substantial evidence because of the aforementioned errors.  *See* Dkt. 12 at

9   23.  As discussed above, because the ALJ erred in assessing the medical evidence, the

10  RFC analysis was not complete, and the ALJ's step-five determination is not supported

11  by substantial evidence and is in error.

12         The Court may remand this case "either for additional evidence and findings or to

13  award benefits."  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Generally, when

14  the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is

15  to remand to the agency for additional investigation or explanation."  *Benecke v.*

16  *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual

17  case in which it is clear from the record that the claimant is unable to perform gainful

18  employment in the national economy," that "remand for an immediate award of benefits

19  is appropriate."  *Id.*

20         Benefits may be awarded where "the record has been fully developed" and

21  "further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at

22

1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits

should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting
> [the claimant's] evidence, (2) there are no outstanding issues that must
> be resolved before a determination of disability can be made, and (3) it
> is clear from the record that the ALJ would be required to find the
> claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.

2002).  Here, issues still remain regarding Wrightman's functional capabilities and her

ability to perform work despite any additional functional limitations.  Accordingly,

remand for further consideration is warranted in this matter.

## VIII.  ORDER

Therefore, it is hereby **ORDERED** that the Commissioner's final decision

denying Wrightman disability benefits is **REVERSED AND REMANDED**.

Dated this 22nd day of August, 2016.

_____
BENJAMIN H. SETTLE
United States District Judge